No. 22-1326

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

CHRISTIAN FENICO, *et al*.

*Plaintiffs-Appellants*,

v.

CITY OF PHILADELPHIA,

*Defendant-Appellee.*

Appeal from Order Granting Motion To Dismiss in Civil Action No. 2:20-cv-03336-PBT in the United States District Court for the Eastern District of Pennsylvania (Honorable Petrese B. Tucker)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

LARRY L. CRAIN
Crain Law Group, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600

JONATHAN J. SOBEL
Law Offices of Jonathan J. Sobel
1500 Walnut Street, Suite 2000
Philadelphia, PA 19102
Tel. (215) 735-7535

*Counsel for the Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT .......................................................................................................... 1

I. The Record Is Insufficient To Justify A Finding Under The Balancing Prong Of *Pickering* That Plaintiffs' Private Speech On Issues of Public Concern Was "Too Offensive" To Be Protected ......................................................... 1

II. There Is No Evidence Before The Court That The Plaintiffs' Speech Impaired The City's Interests Or Orderly Operations .............. 2

III. The Defendant's Inconsistent Position Based On the Political Viewpoint of the Speech In Question Undercuts The Credibility Of Its Argument ............................................................ 7

IV. The Plaintiffs Have Sufficiently Pleaded A Cause of Action for Retaliation Based On Their Exercise of Protected Speech ................................................................................... 11

CONCLUSION ..................................................................................................... 12

CERTIFICATIONS ............................................................................................... 14

# **TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*Jacobellis v. Ohio,*
    378 U.S. 184 (1964) ................................................................................. 1

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*,
    138 S.Ct. 1719, 201 L.Ed 35 (2018) ....................................................... 7

*Matal v. Tam*,
    582 U.S. –, 137 S.Ct. 1744, 1762–1764, 198 L.Ed.2d 366 (2017) ........... 7

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) ................. 11

*Pickering v. Bd. Of Educ. Of City Sch. Dist. Of City of New York,*
    336 U.S. 563 (1968)..…………………………………………………….. 2,4,5,12

*W. Va. State Bd. of Educ. v. Barnette,*
    319 U.S. 624, 642 (1943)……………………………………………………7

**FEDERAL CIRCUIT COURT CASES**

*Craig v. Rich Tp. High School Dist.* 227,
    736 F.3d 1110, 1121 (7th Cir. 2013) ....................................................... 6

*George v. Reheels*,
    738 F.3d 562, 585 (3d Cir. 2013) ........................................................... 11

*Hill v. Borough of Kutztown*,
    455 F.3d 225 (3rd Cir. 2006) .................................................................. 11

*Larsen v. Senate Com. Of Pa.,*
    154 F.3d 82 (3d Cir. 1998)..................................................................... 11

*Munroe v. Cent. Bucks Sch. Dist.*,
    805 F.3d 454 (2015)..................................................................……3,4,5,7

## I. The Record Is Insufficient To Justify A Finding Under The Balancing Prong Of *Pickering* That Plaintiffs' Private Speech On Issues of Public Concern Was "Too Offensive" To Be Protected.

The City's argument may be distilled in one simple point. The punitive sanctions imposed against the Plaintiffs for exercising their private speech on issues of public concern were justified based solely on the self-evident offensive nature of their speech alone. This *ipse dixit* position of the City is at odds with bedrock principles of the First Amendment governing speech by public employees. Such an arbitrary rule effectively bars otherwise protected speech based purely on a subjective standard akin to Justice Stewart's famed declaration regarding obscenity: "I know it when I see it."[1]

The paucity of the record in this case only further heightens the constitutional concerns over such a simplistic approach to adjudicating whether speech, based solely on its content alone, is unprotected at the pleading stage of this case. The Defendant attempts to sidestep this significant procedural concern by arguing disingenuously that "there is a developed record in this case". (Appellee's Brief at 37). There is no developed record. There has not even been a responsive pleading filed in this case. There has only been a complaint and motion to dismiss. No discovery has been taken. No affidavits have been filed. The only

---

[1] *Jacobellis v. Ohio,* 378 U.S. (1964).

"record" is the speech itself; speech which the City argues is sufficient on its face to warrant the discharge or suspension of officers with an impeccable service record. Notably, every single case cited by the Defendant in its brief involving a decision based on the balancing test under *Pickering* was before the court in a procedural posture of summary judgment.[2] This court deserves the same developed record before addressing, based solely on the four corners of the complaint, the substantive constitutional issues presented in this case.

## II. There Is No Evidence Before The Court That The Plaintiffs' Speech Impaired The City's Interests Or Orderly Operations.

The City offers no explanation for how the Plaintiffs' speech in question, which had been present on their individual social media accounts for several years prior to the events giving rise to this litigation, posed any compelling concern to the Police Department's operational interests. The Defendant has not come forward with any evidence to show how its interests in this specific case summarily outweigh the free speech rights of the Plaintiffs to privately speak out on national issues of admitted public concern. It postulates instead that the Plaintiffs' social media posts are *presumed* to undermine its interests based solely on the nature and content of their political speech. Its argument that such speech undermines the ability of the Plaintiffs to protect and serve their community is demonstrably false.

---

[2] *Pickering v. Bd. Of Educ. Of City Sch. Dist. Of City of New York*, 336 U.S. 563 (1968).

Each of the Plaintiffs had sacrificially served their community over the course of several years *after* their political comments in question were first posted.[3] There is no evidence whatsoever in the record to suggest that the Plaintiffs' speech created disharmony within the ranks of the Department. To the contrary, each of the Plaintiffs were highly decorated and respected members of the police department.

The Defendant has failed to cite a single decision involving a public employee's private speech on issues of public concern wherein the court granted a motion to dismiss under Rule 12(b)(6) Fed.R.Civ.P. based purely on the content of the speech alone.

The only Third Circuit case cited by the Defendant that touches on the core First Amendment issues presented in this case is *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454 (2015). Notably in *Munroe*, the court had before it a fully developed factual record and the appeal was from a grant of summary judgment. These facts presented a vastly different scenario than that in the instant case. Natalie Munroe, a teacher, published various blogs which "were intended as a vehicle to keep in touch with friends, [and] Munroe mostly addressed personal matters like her food and film preferences, her children, and her regular yoga classes." *Id.* at 458.

---

[3] Without a shred of evidence to support its conclusory allegation, the City makes the bald assertion that "the Officers' speech has the potential (and actually did) perpetuate the public's and the City's concern that its police force cannot serve the community in a respectful, measured, and unbiased manner." (Appellees' Brief at 38).

Deposition testimony in the case established that some of Munroe's students had been circulating her blogs on social media, and that the concern over some of these posts had risen to a fevered pitch.

> "Kids were furious. They were livid. The calls that were coming in from parents, the e-mails that were coming in, kids had copies of it and they were distributing it in the halls." The principal characterized CB East as "like a ticking time bomb" and asserted that the environment "was so incendiary" that the administration "thought we're going to have a riot or a sit-in or worse." "To say it was a disruption to the learning environment is an understatement." According to Principal Lucabaugh, Munroe was escorted from the building for her own safety.

805 F.3d at 462.

The school received over 200 opt-out requests from parents, and the disruption within the school became a topic of widespread media attention. Ms. Munroe aggressively courted media attention by appearing on ABC, CBS, NBC, CNN and Fox News and other television stations.

Although the overwhelming majority of Munroe's blogs consisted of personal gripes about her students, this Court "reluctantly" found that some of her comments satisfied the public concern requirement in *Pickering*. *Id*. at 470. Specifically, this court found that (like virtually all of the Plaintiffs' posts in the instant case) "humor, satire, and even "personal invective" could be used in order to make or embellish a point about a matter of political, social or other concern to the community.

Particularly instructive to the instant case, *Munroe* emphasized the need for a full record when conducting a *Pickering* balancing inquiry.

> The balancing we must undertake is a <u>fact-intensive inquiry</u> that requires consideration of the <u>entire record</u>, and must yield different results depending on the relative strengths of the issue of public concern and the employer's interest.
>
> 805 F.3d at 472, (emphasis added).

Ultimately, the attenuated "public interest" component of Munroe's blogs persuaded this court to find that her speech failed to outweigh the school's countervailing government interest, especially given the widespread disruption within the school.

> Given our reluctance to assume that the speech at issue here implicated a matter of public concern in the first place, we determine that the interests of Munroe and the public in this speech were entitled to (at best) only minimal weight under the *Pickering* balancing test.
>
> \* \* \*
>
> Simply put, "Plaintiff's speech, in both effect and tone, was sufficiently disruptive so as to diminish any legitimate interest in its expression, and thus her expression was not protected."
>
> *Id*. at 472.

These findings in *Munroe* stand in stark contrast to the facts as pleaded in the instant case. Here, there is no dispute from the Defendant that the social media posts in question addressed issues of public concern. There is also no evidence

before this court of the pervasive disruption that played a significant factor in the court's decision in *Munroe*.

There is one aspect to this court's decision in *Munroe* that is instructive and deserving of consideration in the instant case. The Defendant argues in this case that it is the offensive nature of the Plaintiffs' speech as targeted in the *Plain View* that tips the balance in favor of the government and justifies its censorship of the Plaintiffs' expression on issues of public concern. But as this court recognized in *Munroe*, "The First Amendment generally does not permit the so-called 'heckler's veto,' i.e. 'allowing the public, with the government's help, to shout down unpopular ideas that stir anger.'" 850 F.3d at 475, citing *Craig v. Rich Tp. High School Dist.* 227, 736 F.3d 1110, 1121 (7th Cir. 2013)(referring to "heckler's veto" in which unpopular speech is prohibited on account of community's possible reaction.)[4]

---

[4] The court in *Munroe* found that due to the unique nature of the relationship between teachers and their students the "heckler's veto" argument was inapplicable because the "heckling" came from students and their parents. This case arises in a much different setting. The only criticism of the Plaintiffs' speech in this case came not from members of the community, or from within their department, but from an outside, non-profit activist group which had as its mission the exposure of police officers who espoused political views which it selectively found offensive. The selective nature of this outside criticism is evident by the fact that several officers within the Philadelphia Police Department who posted outwardly racial comments attacking conservative views were not exposed in the *Plain View* or *Injustice Watch*. (See J.Appx. 84, Amd. Compl.).

- 6 -

In *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S.Ct. 1719, 201 L.Ed 35 (2018), the Supreme Court reiterated that "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." 138 S. Ct. 1719, 1731, 201 L. Ed. 2d 35 (2018); citing *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). "I[t] is not, as the Court has repeatedly held, the role of the State or its officials to prescribe what shall be offensive. *Masterpiece,* 138 S. Ct.at 1731. See also *Matal v. Tam*, 582 U.S. ——, 137 S.Ct. 1744, 1762–1764, 198 L.Ed.2d 366 (2017) (opinion of ALITO, J.)("We have said time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'").

### III. The Defendant's Inconsistent Position Based On the Political Viewpoint of the Speech In Question Undercuts The Credibility Of Its Argument.

There is yet another problem with the Defendant's reliance on the content of the speech itself as its sole justification for curtailing the Plaintiffs' exercise of their free speech rights. The pleadings before the court – which must be taken as true in the context of the Rule 12(b)(6) posture of this appeal – contain several factual references to political comments and social media posts by other police officers that were unquestionably racist or violent in nature, but were never the basis of any discipline. Unlike the plaintiffs, in each of these cases, the speakers

openly identify themselves on their social media as members of the City of Philadelphia Police Department without any personal disclaimers in open violation of the City's social media policy.



This post was made by Officer Kathy Caswell and appears in the record at (J.Appx. 84, Amd. Compl.). Unlike the Plaintiffs in this case, at the time this racially-charged comment was posted by Ms. Caswell, she identified herself on her social media as a police officer with the City of Philadelphia Police Department.



(J.Appx. 84, Amd. Compl.).

Another police officer, Michelle Dennard, who identifies herself as a police officer with the City of Philadelphia Police Department refers in her post to all white people as members of the Ku Klux Klan.



(J.Appx. 85, Amd. Compl.).

Yet another officer, Lt. Jonathan Josey who identifies himself on his social media as a member of the Philadelphia Police Department, posted the following racially-charged meme depicting a presidential candidate as a member of the Ku Klux Klan.



(J.Appx. 87, Amd. Compl.).

These are but a few examples of widespread social media posts by officers within the City of Philadelphia Police Department who espouse political positions on the opposite end of the political spectrum from the Plaintiffs. Despite the obvious racist nature of these posts, none of these officers have been subjected to any form of disciplinary action. This is yet another area in which some discovery is

needed to explore the City's inconsistent and seemingly arbitrary enforcement of its social media policies.

### IV. The Plaintiffs Have Sufficiently Pleaded A Cause of Action for Retaliation Based On Their Exercise of Protected Speech.

In order to establish a § 1983 First Amendment retaliation claim, a plaintiff must prove (1) that he engaged in constitutionally-protected activity, (2) that the government responded with retaliation, and (3) that the protected activity caused the retaliation. *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013). This rule is derived from the Supreme Court's opinion in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

The Defendant cites to two cases for the proposition that the Plaintiffs have failed to adequately plead a cause of action for retaliation based on the exercise of their free speech. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3rd Cir. 2006) and *Larsen v. Senate Com. Of Pa.,* 154 F.3d 82 (3d Cir. 1998).

In *Hill*, this court actually reversed the district court's dismissal under Rule 12(b)(6) of a First Amendment retaliation claim based on allegations by the plaintiff that his termination was caused by his speech as a citizen promoting certain ideas and principals that were disfavored by the mayor.

Likewise, in *Larsen*, a case also on appeal from a Rule 12(b)(6) motion to dismiss, this court held that at the pleading stage, the allegations of the complaint must be taken as true.

> According to Larsen's allegations, which we must accept as true for purposes of this appeal from an order entered on the pleadings, the true motive for appellants' decision was retaliation for his protected speech. Appellants may be able to establish *by the end of discovery that their decision in fact rested on a good faith belief*, which they would have formed even in the absence of any protected speech, that they were to required to revoke Larsen's benefits under the 1993 version of section 16. However, at this juncture, we must accept Larsen's allegations that their true reasons were retaliatory, allegations which state a claim for violation of clearly established rights under the First Amendment, precluding dismissal on qualified immunity grounds.

154 F.3d 82, 94–95. (emphasis added).

In this case, the Plaintiffs have alleged that the disciplinary action taken against them was motivated in substantial part by their speech activity. (J.Appx. 47, 50, 53, 58, 63, 69, 73, and 81 Amd. Compl.). These allegations of the Amended Complaint must be taken as true at this pleading stage, and are sufficient to state a claim for First Amendment retaliation.

## **CONCLUSION**

In none of the cases cited by the Defendant has a court analyzed the *Pickering* balancing test based solely on the pleadings themselves. This is not the case to depart from this court's rule that when conducting a *Pickering* balancing analysis, it must undertake a <u>fact-intensive inquiry</u> that requires consideration of the <u>entire record</u>, and must yield different results depending on the relative strengths of the issue of public concern and the employer's interest.

The district court's ruling below should be reversed, and this case should be remanded for further proceedings.

Respectfully submitted,

CRAIN LAW GROUP, PLLC
By:
*/s Larry L. Crain*
Larry L. Crain (Tn. Bar # 09040)
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Larry@crainlaw.legal

*/s Jonathan J. Sobel*
Jonathan J. Sobel (Pa. Bar # 76428)
Law Offices of Jonathan J. Sobel
1500 Walnut Street, Suite 2000
Philadelphia, PA 19102
Tel. (215) 735-7535
Fax: (215) 269-2540
Email: mate89@aol.com

*Counsel for the Plaintiffs*

Date:   July 25, 2022.              */s/ Larry L. Crain*
                                    Larry L. Crain (Tn. Bar # 0940)

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Rule 28.3 of the Rules of the Third Circuit Court of Appeals, undesigned counsel, Larry L. Crain, does hereby certify that he is a member in good standing of the bar of the Third Circuit Court of Appeals, having been admitted on May 5, 1988.

## CERTIFICATION OF IDENTITY STATEMENT

Undersigned counsel for the Plaintiffs-Appellants hereby certifies that the electronic submission of the Plaintiffs-Appellants' Reply Brief and the hard copy paper brief are identical.

## CERTIFICATION OF VIRUS SCAN

Undersigned counsel certifies that a virus program known as Avast One has been run against the final PDF version of this Reply Brief, and no virus was detected.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply Brief of Appellants was served on the following individuals via the Court's ECF-Filing System and via U.S. Mail on this the 25th day of July, 2022:

Meghan Byrnes
City of Philadelphia Law Department
1515 Arch Street
17th Floor
Philadelphia, PA 19102

*Counsel for the Defendant*

                                                */s/ Larry L. Crain*
                                                Larry L. Crain